UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CARGILL, INCORPORATED,

      Plaintiff,

v.                                CASE NO. 3:14-cv-299-J-20MCR

KEYSTONE INDUSTRIES, LLC and
TOM L. SCHOLL,

      Defendants.

_____/

## ORDER

**THIS CAUSE** is before the Court on Defendants' Motion to Strike

("Motion") (Doc. 6) and Plaintiff's Memorandum of Law in Opposition thereto

(Doc. 9).  For the reasons stated herein, the Motion is due to be **DENIED**.

### I.    Background

This action arises out of Defendant Keystone Industries, LLC's

("Keystone") alleged breach of the 2006 Master Coal Purchase and Sale

Agreement ("Master Agreement"), dated November 2, 2010, between Keystone

and Plaintiff Cargill, Incorporated ("Cargill"), for the purchase and sale of coal.

(*See* Doc. 1.)  The Complaint alleges in relevant part:

•     In the summer of 2013, certain of Keystone's creditors seized coal

      purchased by Cargill, resulting in a default under the Master Agreement, as

      a result of which Cargill exercised its right to terminate the Master

1

Agreement and demanded that Keystone immediately pay damages of $13,134,192.86, plus interest.  Cargill also demanded that Defendant Tom Scholl ("Scholl"), Keystone's sole member and owner, pay damages pursuant to a guaranty executed by Scholl in favor of Cargill.

•   Both Keystone and Scholl requested that Cargill forbear from exercising default remedies.

•   While the parties were negotiating the terms of a potential forbearance agreement, in October of 2013, Defendants requested that Cargill facilitate a transaction with JFE Shoji Trade Corporation ("JFE Transaction"), pursuant to which Cargill agreed to sell certain of its coal to JFE through Keystone's coal broker in Asia, Keystone Global Co., Ltd. ("Keystone Global").  The parties agreed the JFE Transaction and all related agreements would be governed by the Master Agreement.

•   The parties to the JFE Transaction also agreed that all proceeds from the sale of Cargill's coal would be deposited in a controlled escrow account in which Cargill held a perfected security interest.  That did not happen; instead, the cash proceeds were diverted to Keystone Global's bank account at Kookmin Bank in South Korea.  Kookmin Bank, a creditor of Keystone Global, offset against the funds in the account to pay other obligations owed by Keystone Global to Kookmin Bank.

•   At the time Keystone Global diverted funds from the JFE Transaction,

Scholl had been negotiating with Keystone Global for the sale of 50%

interest in two of Scholl's other companies—Keystone Properties, LLC

("Properties") and Keystone Investments, LLC ("Investments").  In

conjunction with the refinancing of Properties' terminal facility, Scholl

sought to sell 50% of the equity interests in Properties and Investments to

Keystone Global in an effort to raise funds for his businesses.  When

Keystone Global could not raise sufficient funds for the purchase, Scholl

agreed to sell the interests in Properties and Investments in exchange for

two promissory notes and shares of Keystone Global, thereby increasing

Scholl's ownership interest in Keystone Global to 26.7%.

•   As part of the refinancing, Keystone agreed to forgive more than $23

million in inter-company loans to Properties and Investments and Scholl

personally agreed to assume these obligations.  Defendants knew or

should have known that Keystone Global had limited liquidity and ability to

pay its debts at the time they requested Cargill to facilitate the JFE

Transaction.  As a result, Cargill has incurred additional damages.

(*Id.*)

Accordingly, on March 18, 2014, Cargill brought this action for breach of

contract against Keystone and breach of guaranty against Scholl.  (*Id.*)

## II.   The Parties' Contentions

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, Defendants

3

move to strike paragraphs 5-7, 12, and 58-64 of Plaintiff's Complaint, as

impertinent, immaterial, and scandalous.  (Doc. 6.)  With respect to paragraphs

59-64, which include allegations pertaining to Keystone Properties' refinancing,

Defendants argue that "Keystone and Scholl will now need to conduct discovery,

elicit testimony and unnecessarily spend resources to prove that the affiliate's

loan restructuring was not any part of a scheme to thwart or defraud Cargill.

Such matters [are] more appropriately left for post-judgment collection

proceedings."  (*Id.* at 5.)  Defendants further argue that Plaintiff's allegations in

paragraphs 5-7, 12, and 58, concerning the relationship between Keystone,

Keystone Global, and Scholl, are immaterial and impertinent.  (*Id.*)  Defendants

explain:

> By injecting the allegations contained in paragraphs 5 through 7, 12
> and 58 through 64 of the complaint into this litigation, Cargill forces
> Defendants to spend unnecessary time and effort proving that Scholl
> has no controlling interest in Keystone Global and was unaware of its
> financial difficulties at the time Kookmin Bank exercised its right of
> setoff against funds in Keystone Global's accounts.  Like the
> circumstances surrounding Keystone's Properties' restructuring,
> disproving the Keystone Global related allegations will require
> discovery and testimony from third parties, namely representatives of
> Keystone Global and Kookmin Bank, many of whom reside in Korea.
> Such discovery can only be had at great expense to the Defendants,
> and in the end, such testimony and evidence will do little more than
> "muddy the waters" with respect to the breach of contract claims
> framed by Cargill's complaint.  Legal prejudice thus exists[.] . . . And
> while the allegations concerning the restructuring and implied
> collusion are not the most inflammatory allegations one has ever
> read, they unquestionably tend to cast a derogatory light on both
> Keystone and Scholl without offering any probative value in support
> of Cargill's breach of contract claims.

4

(*Id.* at 7, 9.)

Plaintiff responds:

None of the challenged allegations is immaterial, impertinent, or scandalous.[1]  To the contrary, the challenged allegations: (1) directly relate to Keystone's breaches of contract and Scholl's corresponding breach of his obligation as guarantor; (2) do not prejudice defendants in any way; and (3) do not "unnecessarily reflect[] on the moral character of an individual or state[] anything in repulsive language that detracts from the dignity of the court."

(Doc. 9 at 5.)  Plaintiff explains the subject allegations are central to explaining how and why Defendants breached their contractual obligations, bear directly on Plaintiff's damages for breach of contract, and provide critical background about the business relationship between Cargill, Keystone, and Scholl, and the complex transactions that form the basis of the parties' dispute.  (*Id.* at 6-8.)  Further, Defendants' "premature complaints about 'unnecessary discovery' should be resolved *after* discovery begins . . . . If defendants believe that certain document requests, interrogatories, or other discovery are unduly burdensome, they may move for a protective order, cost-shifting, or other relief."  (*Id.* at 10.)

## III.    Standard

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f). However, "motions [to strike] under Rule 12(f) are viewed with disfavor and are

---

[1] Keystone makes no attempt to argue that any allegation in the complaint is "redundant."

infrequently granted" even when they are "technically appropriate and well-founded" because striking is "a drastic remedy." *Harvey v. Lake Buena Vista Resort, LLC*, 568 F. Supp. 2d 1354, 1359 (M.D. Fla. 2008). *See also Augustus v. Board of Pub. Instruction of Escambia County*, 306 F.2d 862, 868 (5th Cir. 1962).

To prevail on a motion to strike, the movant must show that "the allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration . . . and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party." *Harvey*, 568 F. Supp. 2d at 1359. *See also Augustus*, 306 F.2d at 868 ("The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy."); *Nankivil v. Lockheed Martin Corp.*, 216 F.R.D. 689, 691 (M.D. Fla. 2003), *aff'd*, 87 Fed. App'x 713 (11th Cir. 2003) ("A 'court will not exercise its discretion under the rule to strike a pleading unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party.'").

"A disputed question of fact cannot be decided on [a] motion to strike." *Augustus*, 306 F.2d at 868. *See also Microsoft Corp. v. Jesse's Computer & Repair, Inc.*, 211 F.R.D. 681, 683 (M.D. Fla. 2002) ("In evaluating a motion to strike, 'the court must treat all well pleaded facts as admitted and cannot consider matters beyond the pleadings.'"). Further, "when there is no showing of prejudicial harm to the moving party, the courts generally are not willing to

determine disputed and substantial questions of law upon a motion to strike."
*Augustus*, 306 F.2d at 868.   "[T]hese questions quite properly are viewed as
determinable only after discovery and a hearing on the merits . . . ."  *Harvey*, 568
F. Supp. 2d at 1360.

## IV.    Analysis

Defendants have not shown that the subject allegations have no possible
relation to the controversy, may confuse the issues, or unfairly prejudice
Defendants to justify such a drastic remedy as striking the allegations.  To the
contrary, the subject allegations seem relevant to understanding the remaining
allegations in the Complaint.  For example, they provide context for
understanding Plaintiff's claims for breach of contract, breach of guaranty, and
damages.  Further, the Court rejects Defendants' claim of prejudice based on
potentially unnecessary and/or costly discovery as premature because, if
necessary, it can be addressed by an appropriate motion after commencement of
discovery.  Thus, the Motion is due to be denied.

Accordingly, it is **ORDERED**:

The Motion (**Doc. 6**) is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida, on May 5, 2014.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record